# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TOM HIGGINS, individually and on behalf of all others similarly situated, | Case No.: 2:15-cv-13769 |
| Plaintiff, | Hon. Stephen J. Murphy, III |
| v. | Mag. Mona K. Majzoub |
| TV GUIDE MAGAZINE, LLC, a Delaware limited liability company, | |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**Respectfully submitted by:**

Ari J. Scharg
ascharg@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn J. Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596-1111
Fax: (248) 671-0335

*Proposed Class Counsel*

## STATEMENT OF ISSUES PRESENTED

1.      Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes?

**Plaintiff's Answer: Yes.**

2.      Should Plaintiff's counsel be appointed as Class Counsel?

**Plaintiff's Answer: Yes.**

3.      Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed Settlement Class?

**Plaintiff's Answer: Yes.**

4.      Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711–15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455 (2013)

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007)

*Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015)

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)

*Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D. Mich. 2001)

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001)

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161
     (E.D. Mich. Aug. 2, 2010)

*Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013)

*Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007)

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)

# TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................. 1

II.    **BACKGROUND** ................................................................. 4

    A.    **Michigan's Preservation of Personal Privacy Act** ...................... 4

    B.    **Plaintiff's Allegations** ............................................... 5

    C.    **The Litigation History and Settlement Discussions** ................ 6

III.    **TERMS OF THE SETTLEMENT** .......................................... 9

    A.    **Class Definition** .................................................. 9

    B.    **Monetary Relief** ................................................ 10

    C.    **Prospective Relief** .............................................. 10

    D.    **Release** ......................................................... 11

    E.    **Notice and Administration Expenses** ........................... 11

    F.    **Incentive Award** ................................................ 11

    G.    **Attorneys' Fees and Expenses** ................................. 11

IV.    **THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES** .................. 12

    A.    **The Numerosity Requirement Is Satisfied** ..................... 13

    B.    **The Commonality Requirement Is Satisfied** ................... 14

    C.    **The Typicality Requirement Is Satisfied** ...................... 17

    D.    **The Adequacy Requirement Is Satisfied** ...................... 19

    E.    **The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)** ............................... 22

   **1.** *Common Questions of Law and Fact Predominate* .................... 22

   **2.** *A Class Action Is a Superior Method for Adjudicating This Action* .................................................................... 24

**V.** **PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** ........................................................................ 26

**VI.** **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL** .................................................. 27

**VII.** **THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE** ............................................................. 33

**VIII.** **CONCLUSION** ........................................................................ 35

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ..............................................................................*passim*

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds,*
  568 U.S. 455 (2013) ........................................................................ 12, 24

*BMW of N. Am., Inc. v. Gore,*
  517 U.S. 559 (1996) ...................................................................... 30

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,*
  523 U.S. 424 (2001) ...................................................................... 30

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ...................................................................... 33

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ............................................................ 14, 15, 22

## United States Appellate Court Cases

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ........................................................ 19

*Daffin v. Ford Motor Co.,*
  458 F.3d 549 (6th Cir. 2006) ........................................................ 13

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) ................................................... 13, 17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
  722 F.3d 838 (6th Cir. 2013) .......................................... 12, 14, 24

*Lane v. Facebook, Inc.,*
  696 F.3d 811 (9th Cir. 2012) ................................................... 3, 32

*Parker v. Time Warner Entm't Co.*,
    331 F.3d 13 (2d Cir. 2003) ........................................................... 30

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ................................................. 23, 24

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) ....................................................... 19

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ....................................................... 27

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) ....................................................... 19

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2010) ................................................. 24, 25

**United States District Court Cases**

*Calloway v. Caraco Pharm. Labs., Ltd.*,
    287 F.R.D. 402 (E.D. Mich. 2012) ............................................... 25

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) ......................................... 23, 25

*Coulter-Owens v. Time Inc.*,
    No. 2:12-cv-14390-GCS-MKM (E.D. Mich.) ..................................... *passim*

*Coulter-Owens v. Time Inc.*,
    308 F.R.D 524 (E.D. Mich. 2015) ..................................... *passim*

*Coulter-Owens v. Rodale, Inc.*,
    No. 1:14-cv-12688-RHC-RSW (E.D. Mich.) .................................. 2, 13, 32

*Curry v. SBC Comms, Inc.*,
    250 F.R.D 301 (E.D. Mich. 2008) ......................................... 13, 14

*Date v. Sony Elecs., Inc.*,
    No. 07-cv-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013).............. 18

*Davidson v. Henkel Corp.*,
302 F.R.D. 427 (E.D. Mich. 2014) ............................................................. 13

*In re Facebook Privacy Litig.*,
No. 10-cv-02389 (N.D. Cal. 2010) ............................................................. 21

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013) ..................................................... 3, 32

*Gilkey v. Cent. Clearing Co.*,
202 F.R.D. 515 (E.D. Mich. 2001) ............................................................. 17

*Halaburda v. Bauer Publ'g Co, LP*,
2:12-cv-12831 (E.D. Mich.) ...............................................................*passim*

*Harris v. comScore, Inc.*,
292 F.R.D. 579 (N.D. Ill. 2013) .......................................................... 20, 21

*In re Google Buzz Privacy Litig.*,
No. 10-cv-00627, 2011 WL 7460099 (N.D. Cal. Jun. 2, 2011) ............... 3, 32

*In re Netflix Privacy Litig.*,
No. 5:11-cv-00379 (N.D. Cal.).......................................................... 3, 16, 32

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)............. 27

*Int'l Union v. Ford Motor Co.*,
No. 05-cv-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)......... 19, 28

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) ............................................................. 29

*Kinder v. Meredith Corp.*,
No. 1:14-cv-11284 (E.D. Mich.) ........................................................*passim*

*Leonhardt v. ArvinMeritor, Inc.*,
581 F. Supp. 2d 818 (E.D. Mich. 2008) ..................................................... 31

*Little Caesar Enters., Inc. v. Smith*,
  172 F.R.D. 236 (E.D. Mich. 1997) ........................................................ 18, 19

*Machesney v. Lar-Bev of Howell, Inc.*,
  292 F.R.D. 412 (E.D. Mich. 2013) ............................................................. 22

*Merenda v. VHS of Mich., Inc.*,
  296 F.R.D. 528 (E.D. Mich. 2013) ........................................................ 14, 22

*Moeller v. Am. Media, Inc.*,
  No. 5:16-cv-11367-JEL-EAS (E.D. Mich.)................................................. 13

*Olden v. LaFarge Corp.*,
  472 F. Supp. 2d 922 (E.D. Mich. 2007) ..................................................... 31

*Parker v. Time Warner Entm't Co.*,
  239 F.R.D. 318 (E.D.N.Y. 2007)................................................................. 16

*Perlin v. Time Inc.*,
  No. 2:16-cv-10635 (E.D. Mich. July 5, 2018)................................. 13, 16, 20

*Reese v. CNH Am., LLC*,
  227 F.R.D. 483 (E.D. Mich. 2005) ............................................................. 17

*Sheick v. Auto. Component Carrier, LLC*,
  No. 09-cv-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ......... 27, 29

*Supnick v. Amazon.com, Inc.*,
  No. 00-cv-0221P, 2000 WL 1603820 (W.D. Wash. May 18, 2000)...... 16, 17

*UAW v. Gen. Motors Corp.*,
  No. 05-cv-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)......... 29

**Statutory Provisions**

28 U.S.C. § 1332................................................................................................ 6

28 U.S.C. § 1715........................................................................................... 4, 34

M.C.L. § 445 ........................................................................ 4, 15

Fed. R. Civ. P. 12 .......................................................... *passim*

Fed. R. Civ. P. 23 .......................................................... *passim*

**Other Authorities**

S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016) ............................ 31

S.B. 984, 99th Leg. Reg. Sess. (Mich. 2018) ............................ 31

Conte & Newberg,
    4 *Newberg on Class Actions*, § 11.25 (4th Ed. 2002) ............................ 27, 34

Daniel R. LeCours, Note,
    *Steering Clear of the "Road to Nowhere": Why the BMW*
    *Guideposts Should Not be Used to Review Statutory*
    *Penalty Awards,* 63 Rutgers L. Rev. 327 (2010) ........................................ 30

Hon. William B. Murphy & John Vanden Hombergh,
    Michigan Non-Standard Jury Instr. Civil § 32:10 (2014) ........................... 15

*Manual for Complex Litig.* § 21.632 (4th ed. 2004) ............................................. 27

## I.    INTRODUCTION

Plaintiff Tom Higgins ("Plaintiff") filed this class action alleging that

Defendant TV Guide Magazine, LLC ("Defendant" or "TV Guide") violated the

Michigan Preservation of Personal Privacy Act ("PPPA") by systematically

disclosing its customers' magazine subscription histories and personal reading

habits to third-party companies without notice or consent. After more than two

years of hard-fought litigation between former plaintiff Shirley Hyman and

Plaintiff Tom Higgins on the one hand, and Defendant TV Guide on the other, the

parties have reached a Class Action Settlement Agreement that, if approved, will

resolve Plaintiff's and the proposed Settlement Class's PPPA claims against

Defendant.[1] As discussed herein, the Settlement—which was reached only after

extensive class and merits discovery and numerous rounds of arm's-length

negotiations—is an excellent result for the proposed Settlement Class.[2]

Under the terms of the Settlement, TV Guide has agreed to establish a $1.7

million non-reversionary Settlement Fund, which will be used to pay all approved

claims by class members, notice and administration expenses, an incentive award

to Plaintiff, and attorneys' fees to proposed Class Counsel as awarded by the

_____

[1]     The proposed Settlement Agreement ("Agreement") is attached hereto as Exhibit 1.

[2]     Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Settlement Agreement.

Court. In terms of the monetary relief to class members, those who submit a short and simple one-page claim form will receive a *pro rata* cash award, estimated to be $50-100.[3] And just as important, the proposed Settlement also provides meaningful prospective relief by prohibiting Defendant from disclosing its Michigan customers' protected information to any third-party companies, including database cooperatives Wiland Direct, Epsilon Data Management, LLC, and I-Behavior, for a period of four years unless it first obtains customers' express written consent.

Ultimately, while the strength of the Settlement should be apparent on its face, the Court need not evaluate the Settlement in a vacuum, since it follows the example set by those that came before it in this District. In the first ever PPPA settlement, *Halaburda v. Bauer Publishing Co., LP*, 2:12-cv-12831, dkt. 68 (E.D. Mich. Jan. 6, 2015), the court granted final approval to a settlement (with the same structure but on behalf of a much smaller class) that created a $775,000 cash fund, with claiming class members receiving $74 each. In *Coulter-Owens v. Rodale, Inc.*, 1:14-cv-12688-RHC-RS, dkt. 54 (E.D. Mich. Sept. 29, 2016), the court granted final approval to a structurally-identical settlement (on behalf of a larger class this time), which created a $4.5 million cash fund that paid out approximately $44 to each claiming class member. And, in *Kinder v. Meredith Corp.*, 1:14-cv-

---

[3]     This estimation is based upon a participation rate of 10–20%, which is typical in PPPA class action settlements.

2

11284, dkt. 72 (E.D. Mich. Oct. 5, 2015), the parties reached a settlement creating

a $7.5 million cash fund, which (also on behalf of a larger class) resulted in

claiming class members receiving about $32 for their claims. Here, the Settlement

Class Members will receive an estimated $50–100, which closely follows—if not

exceeds—the established market rate for PPPA settlements in this District. Further,

in all three cases, the prospective relief was very similar to the relief secured here.

Looking beyond the PPPA to privacy cases more generally, the instant

Settlement also meets or exceeds privacy settlements reached in litigation

involving similar statutes that have been approved throughout the country. *See,*

*e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) *cert. denied*,

134 S. Ct. 8 (2013) (approving a settlement of federal Video Privacy Protection

Act ["VPPA"] claims, and directing $9.5 million to *cy pres* as the sole form of

monetary relief); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, dkt. 256 (N.D.

Cal. Mar. 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In*

*re Google Buzz Privacy Litig.*, No. 10-cv-00627, 2011 WL 7460099, at *3 (N.D.

Cal. Jun. 2, 2011) (approving $8.5 million *cy pres* settlement); *Fraley v. Facebook,*

*Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013) (approving privacy settlement

providing claimants with a cash payment of $15). While the paradigm in privacy

settlements is shifting away from *cy pres* deals to cash to class members, there is

3

little question the instant Settlement affords relief to the class well beyond that which is typically secured in the privacy settlement context.

Given the significant relief secured on behalf of the Class, the Court should have no hesitation finding that the Settlement falls well within the range of possible approval. Accordingly, Plaintiff respectfully requests that the Court grant his motion for preliminary approval in its entirety and direct that notice be disseminated to the proposed Settlement Class and a final fairness hearing be set.

## II.   BACKGROUND

### A.   Michigan's Preservation of Personal Privacy Act

A brief summary of the PPPA will give context to the proposed Settlement. The Michigan legislature passed the PPPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." M.C.L. § 445.1712. As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

*Id.*

To enforce the statute, the PPPA authorizes civil actions and provided for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

4

**B.      Plaintiff's Allegations**

Plaintiff Tom Higgins alleges that TV Guide disclosed its customers' personal reading information to third parties without their permission in violation of the Michigan PPPA. (*See* Plaintiff's First Amended Class Action Complaint ("FAC"), dkt. 64.) In his First Amended Complaint, Plaintiff claims that despite the substantial revenue its magazine subscriptions generate, Defendant has a business division dedicated to selling information related to its customers' magazine subscription histories and personal reading habits. (*Id.* ¶¶ 2, 22, 24–26, 51–53, 60.) To increase the value of such information, Plaintiff alleges that Defendant first trades its customers' protected reading information with certain third parties—including data mining companies—in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. (*Id.* ¶¶ 2, 19, 22, 26, 34–35.) Defendant thereafter "enriches" its own customer profiles with this additional data (e.g., their income levels, marital status, ages, ethnicities, credit card types, and other socio-economic data), and then sells the enriched information to other unrelated third parties, including database cooperatives, for a profit. (*Id.* ¶¶ 2, 19, 26, 37, 60.)

Plaintiff further alleges that Defendant's subscribers never provide consent to disclose information to third parties related to their magazine subscriptions. (*Id.* ¶¶ 3, 27, 33–38, 56, 57.) This is because, during the subscription process,

5

subscribers are never presented with or required to consent to any terms or policies informing them of Defendant's disclosure practices. (*Id*.) Likewise, even after subscribing, Defendant fails to notify customers that it will disclose any information to third parties, let alone their protected reading information. (*Id.* ¶¶ 3, 27, 32–35, 56.) Nonetheless, Defendant is in the business of disclosing all of its subscribers' protected reading information to various third parties, without first obtaining their consent. (*Id.* ¶¶ 2, 3, 26.)

### C.     The Litigation History and Settlement Discussions

As a result of Defendant's alleged conduct, on October 26, 2015, this putative class action was filed in the United States District Court for the Eastern District of Michigan by then-plaintiff Shirley Hyman. (Dkt. 1.) In response, on April 1, 2016, Defendant filed a motion to dismiss the complaint under Rule 12(b)(1), arguing, *inter alia,* that the Court lacked subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (i) its LLC members resided in Michigan, such that diversity of citizenship was lacking between it and the putative class of Michigan subscribers, and (ii) Plaintiff could not meet CAFA's $5 million jurisdictional minimum due to a proposed amendment to the PPPA that, according to Defendant, would bar recovery of any statutory damages. (Dkts. 9, 13, 15.) Three days later, on April 4, 2016, Defendant filed a

motion to stay class discovery pending adjudication of its motion to dismiss and the enactment of the proposed amendment to the PPPA. (Dkt. 11.)

The parties thereafter entered into a stipulation permitting plaintiff Hyman to conduct discovery on the jurisdictional issues raised by Defendant's motion to dismiss, namely the citizenship of its members and the location of its "nerve center." (Dkt. 19.) Pursuant to that agreement, Defendant produced documents in response to plaintiff Hyman's written discovery requests and produced two of its officers—Lawrence MacKenzie and Paul Turcotte—for depositions. (Declaration of Ari J. Scharg in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Scharg Decl."), attached hereto as Exhibit 2, ¶ 2.) Plaintiff's counsel then deposed TV Guide's witnesses on June 16, 2016 in New York City. (*Id*.)

Following the completion of jurisdictional discovery, plaintiff Hyman filed a combined brief in opposition to Defendant's motions to dismiss and stay on June 30, 2016 (dkt. 21), and Defendant filed a reply brief in support of its pending motions on July 7, 2016 (dkt. 24). On August 22, 2016, the Court stayed the case pending the Sixth Circuit's decision in *Coulter-Owens v. Time Inc.*, Nos. 16-1321 & 16-1380, where the appellate court was considering whether an alleged PPPA violation provides Article III standing. (Dkt. 32.) On June 30, 2017, four days after the Sixth Circuit issued its decision in *Coulter-Owens*, plaintiff Hyman filed a

motion to lift the stay (dkt. 37), which was granted the same day (dkt. 38). On

October 4, 2017, the Court entered an Order denying Defendant's motions to

dismiss and stay in full. (Dkt. 41.) Defendant answered the complaint two weeks

later by denying the allegations and raising 18 affirmative defenses. (Dkt. 43.)

The Court then entered a Scheduling Order on October 25, 2017 (dkt. 48),

and soon after, plaintiff Hyman and Defendant exchanged initial disclosures and

served written discovery on each other and five third-party vendors. (Scharg Decl.

¶ 3.) Over the next eight months, plaintiff Hyman and Defendant engaged in

substantial class- and merits-related discovery, which included the production and

review of thousands of pages of documents, numerous meet and confer

conferences, and expert review of various transmission and data logs produced by

the five third-party vendors. (*Id.* ¶ 4.) Throughout discovery, the parties discussed

the possibility of early resolution and kept lines of communication open regarding

settlement. (*Id.* ¶ 5.)

Unfortunately, as the discovery deadline approached, plaintiff Hyman

suffered a severe health issue which rendered her unable to continue serving as the

class representative. (*Id.* ¶ 6.) On May 24, 2018, the parties met and conferred on

this matter and Defendant agreed to allow another class member—Tom Higgins, a

Michigan resident whose claims are virtually identical to Hyman's—to substitute

into the case, subject to Court approval. (*Id.* ¶ 7.) The next day, on May 25, 2018,

the Parties jointly filed a motion to substitute Tom Higgins into the case as the lead plaintiff (dkt. 62), and the Court granted the motion on June 4, 2018 (dkt. 63).

The following day, on June 5, 2018, Plaintiff Higgins filed an amended complaint, substituting himself in as the lead plaintiff in place of Shirley Hyman. (Dkt. 64.) Plaintiff Higgins then issued amended discovery requests to Defendant, and the Parties scheduled his deposition. (Scharg Decl. ¶ 8.) At that point, the Parties resumed settlement discussions and, per the Court's order, scheduled an in-person private mediation to take place on August 1, 2018 in an effort to resolve the case without the expense of further litigation, which would necessarily include adversarial class certification and summary judgment briefing. (*Id.* ¶ 9; *see* dkt. 66.) After multiple rounds of arm's-length negotiations in the weeks leading up to mediation, the Parties were able to reach agreement on the principal terms of the Settlement, which is now before the Court. (Scharg Decl. ¶ 10.)

## III.   TERMS OF THE SETTLEMENT

### A.   Class Definition

The "Settlement Class" is defined as:

All persons with Michigan street addresses who purchased a subscription to *TV Guide Magazine* or *TV Weekly* from TV Guide between October 26, 2009

and October 26, 2015.[4]

(Agreement ¶ 1.29.)

### B.    Monetary Relief

Defendant shall establish a $1.7 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* portion after payment of notice and administrative expenses, attorneys' fees, and an incentive award to the Class Representative. (*Id.* ¶¶ 1.31, 2.1.) No portion of the Settlement Fund will revert back to Defendant. (*Id.* ¶ 2.1.)

### C.    Prospective Relief

For a period of four years following the Preliminary Approval of the Settlement Agreement, Defendant agrees not to disclose any Michigan Subscriber Information to any third-party companies without first obtaining express written consent of the affected subscribers. (*Id.* ¶ 2.2.)

---

[4]    Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (4) the legal representatives, successors or assigns of any such excluded persons. (Agreement ¶ 1.29.)

### D.      Release

In exchange for the relief described above, Defendant and each of its related

and affiliated entities (the "Released Parties" defined in ¶ 1.25 of the Settlement

Agreement) will receive a full release of all claims arising out of or related to

Defendant's disclosure of the Settlement Class Members' magazine subscription

information. (*See id.* ¶¶ 1.24–1.26 for full release language.)

### E.      Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set

forth in the Agreement and any other notice as required by the Court, as well as all

costs of administration of the Settlement. (*Id.* ¶¶ 1.27, 1.31.)

### F.      Incentive Award

In recognition of his efforts on behalf of the Settlement Class, Defendant has

agreed that Plaintiff Tom Higgins may receive, subject to Court approval, an

incentive award of $5,000 from the Settlement Fund, as appropriate compensation

for his time and effort serving as class representative and party to the Action.

Defendant will not oppose any request limited to this amount. (*Id.* ¶ 8.3.)

### G.      Attorneys' Fees and Expenses

Defendant has agreed that the Settlement Fund may also be used to pay

Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action,

in an amount to be approved by the Court. (*Id.* ¶¶ 1.31, 8.1.) Class Counsel have

agreed to petition the Court for no more than thirty-five percent (35%) of the

Settlement Fund. (*Id*. ¶ 8.1.)

## IV.   THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court

must determine that the proposed settlement class is appropriate for certification.

*See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification

is proper if the proposed class satisfies the numerosity, commonality, typicality,

and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a);

*see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013).

Additionally, because Plaintiff seeks certification under Rule 23(b)(3), he must

also demonstrate that (i) common questions of law or fact predominate over

individual issues and (ii) a class action is the superior device to adjudicate the

claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to

determine whether certification of a class action lawsuit is appropriate. *In re*

*Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th

Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the

Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

Notably, in a detailed opinion performing the "rigorous analysis" required

by Rule 23, Judge Steeh of this District certified a class of magazine subscribers

alleging nearly the exact same conduct at issue here—the systematic disclosure of

statutorily protected information to third-party companies, including database

cooperative Wiland Direct. *Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D.

Mich. 2015). Likewise, similar classes of magazine subscribers were certified for

settlement purposes in the *Moeller, Rodale*, *Meredith*, and *Bauer* actions, and most

recently in *Perlin v. Time Inc.*, No. 2:16-cv-10635, dkt. 51 (E.D. Mich. July 5,

2018). *See Moeller v. Am. Media, Inc.*, No. 5:16-cv-11367-JEL-EAS, dkt. 34 (E.D.

Mich. Jun. 8, 2017); *Rodale, Inc.*, No. 1:14-cv-12688-RHC-RSW, dkt. 44 (E.D.

Mich. May 3, 2016); *Kinder*, No. 14-cv-11284, 2016 WL 454441, dkt. 76 (E.D.

Mich. Feb. 5, 2016); *Halaburda*, No. 2:12-cv-12831-GCS-RSW, dkt. 63 (E.D.

Mich. Sept. 26, 2014). Like the classes in those cases, the proposed Settlement

Class here should be certified.

### A.     The Numerosity Requirement Is Satisfied

The numerosity requirement is met when joining a large number of plaintiffs

in a single suit would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med.*

*Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Although there is no fixed numerical

threshold for determining impracticability of joinder, a "substantial" amount of

members will usually suffice. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th

Cir. 2006). Only a reasonable estimate or some evidence of the number of

members in the purported class is required. *Id.*; *see also Davidson v. Henkel Corp.*,

302 F.R.D. 427, 436–37 (E.D. Mich. 2014) (certifying a class of 49 members);

*Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) (noting that 40 class members is sufficient to satisfy the numerosity requirement).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. According to Defendant's records, the proposed Settlement Class is comprised of approximately 90,000 Michigan residents who purchased a *TV Guide Magazine* or *TV Weekly* subscription from TV Guide between October 26, 2009 and October 26, 2015. (Scharg Decl. ¶ 11.) There is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

### B.    The Commonality Requirement Is Satisfied

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Michigan Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See Whirlpool Litig.*, 722 F.3d at 852–53.

14

Here, the common contention on which the claims of all class members depend is that Defendant disclosed each of its customers' protected information to third party data miners and database cooperatives, like Wiland, Epsilon, and I-Behavior, in violation of the PPPA. Determination of the truth or falsity of this contention will resolve an issue—the key issue in the case—central to each class member's claim at once.

Determining the truth or falsity of this common contention raises numerous common questions that track the elements of a PPPA claim, including: (1) whether Defendant is "engaged in the business of selling at retail . . . written materials," (2) whether Defendant disclosed "information concerning the purchase . . . of those materials by a customer" to third parties, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Defendant obtained written permission prior to the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Defendant adequately informed its subscribers that they could remove their names at any time from the disclosed subscriber lists. M.C.L. § 445.1712; *see also* Hon. William B. Murphy & John Vanden Hombergh, Michigan Non-Standard Jury Instr. Civil § 32:10 (2014). As such, it is a common question whether Plaintiff and the members of the proposed Settlement Class all suffered the same injuries that entitle them to damages as a result of Defendant's

alleged uniform conduct. *See, e.g., Dukes*, 564 U.S. at 349–50. Each of these legal questions can be determined on a class-wide basis using the same evidence regarding Defendant's practices. *See Coulter-Owens*, 308 F.R.D. at 533 (finding that the litigation, which involved each of the contested issues here, was "driven by issues that are common to the entire putative class.").

Numerous federal courts, including courts in this District, have similarly held that cases like this one—in which defendants are accused of uniformly disclosing information protected by a privacy statute—raise common issues of fact or law. *See, e.g., id.*, at 532–534; *Perlin*, No. 2:16-cv-10635, dkt. 51; *Kinder*, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016) (finding that "the course of Meredith's conduct with customer purchasing information and the applicability of [the PPPA] to that conduct" raises common questions of law and fact); *In re Netflix Privacy Litig.*, 2012 WL 2598819, at *3 (N.D. Cal. July 5, 2012) ("There are questions of law or fact common to class members because all claims for relief arise from [defendant's] stated policy for and a uniform practice of retaining and disclosing [statutorily-protected information]—affecting all those individuals in the same way.") (internal citation omitted); *Parker v. Time Warner Entm't Co.*, 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question— whether class members were injured because of [defendant's] disclosure of their

[statutorily protected information] without properly notifying them of that practice"); *Supnick v. Amazon.com, Inc.*, 2000 WL 1603820, at *1 (W.D. Wash. May 18, 2000) (finding commonality established where the defendants engaged in common course of conduct toward every member of the proposed class: disclosing their personal information without consent).

Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

### C.   The Typicality Requirement Is Satisfied

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *Reese v. CNH America, LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005). "Typicality may be presumed when the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members.'" *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082). In other words, when the basis of the suit is the

17

defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Here, Plaintiff alleges that Defendant's disclosure of his subscription information is not a one-off situation unique to him, but rather, part of Defendant's business of disclosing its customers' subscription information to third parties without consent. (FAC ¶¶ 3, 27, 32–35, 56, 57.) No matter the person—whether it be Plaintiff or other members of the putative class—the disclosures are made in the exact same manner and for the exact same purpose. And, because Plaintiff alleges that such conduct violates the PPPA, which provides identical statutory damages to all members of the Settlement Class, his claims are undoubtedly typical of the other putative class members because everyone was subjected to the same alleged unlawful conduct (i.e., Defendant's allegedly unlawful disclosures). Accordingly, by pursuing his own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied. *See, e.g., Coulter-Owens*, 308 F.R.D. at 534–35 (finding typicality met where "plaintiff and the proposed class purchased . . . magazines . . . in the same manner . . . and defendant allegedly disclosed each plaintiff's 'record or information concerning the purchase' to [third party data miners]."); *Date v. Sony Elecs., Inc.*, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . . their claims are based on the same legal

theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "the class representatives' claims [arose] from the same events, legal documents, and consequences and legal theories affecting all [class members]").

### D.   The Adequacy Requirement Is Satisfied

The final Rule 23(a) prerequisite requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)); *accord Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same type of relief as the other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem*, 521 U.S. at 625–26).

In this case, Plaintiff—like each and every one of the Settlement Class Members—is a Michigan customer that purchased a magazine subscription from

Defendant and then allegedly had his subscription information disclosed to third parties without consent. (FAC ¶¶ 30, 32–35.) Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA, and ensuring that such allegedly unlawful disclosures do not continue in the future. As such, Plaintiff does not have any interests antagonistic to those of the proposed Settlement Class, and his pursuit of this litigation—including his willingness to step up as the lead plaintiff when plaintiff Hyman could no longer serve—should be clear evidence of that.

Likewise, proposed Class Counsel—Ari J. Scharg, Eve-Lynn J. Rapp, and Schuyler R. Ufkes of Edelson PC—have extensive experience litigating class actions of similar size, scope, and complexity to the instant action. (Scharg Decl. ¶ 12.) They regularly engage in major complex litigation involving consumer privacy, including recent PPPA cases, have the resources necessary to conduct litigation of this nature, and have been appointed lead class counsel by courts in this District and numerous others throughout the country. *See* Firm Resume of Edelson PC, attached hereto as Exhibit 2-A; *see also Coulter-Owens,* 308 F.R.D. at 535–36 (achieving adversarial class certification with the Court noting that Edelson PC "is qualified to serve as class counsel especially given counsel's prior experience in handling a class action lawsuit dealing with the same claims before this court."); *Perlin*, No. 2:16-cv-10635, dkt. 51 (E.D. Mich. July 5, 2018)

(appointing Edelson PC as class counsel in PPPA settlement); *Halaburda*, No.
2:12-cv-12831, dkt. 63 (same); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 581
(N.D. Ill. 2013) (achieved adversarial certification in the largest-ever privacy class
action and appointed class counsel); *In re Facebook Privacy Litig.*, No. 10-cv-
02389, dkt. 69 (N.D. Cal. 2010) (noting that the attorneys at Edelson are "pioneers
in the electronic privacy class action field, having litigated some of the largest
consumer class actions in the country on this issue").

Further, proposed Class Counsel have devoted substantial resources to
prosecuting TV Guide for its allegedly unlawful disclosure practices, including
investigating former-plaintiff Hyman's, Plaintiff Higgins', and the Settlement
Class's claims against TV Guide, aggressively pursuing those claims through
motion practice, conducting substantial jurisdictional-, merits-, and class-related
discovery, engaging in extensive settlement discussions, and ultimately,
negotiating the Settlement now before the Court, which brings real and substantial
relief to the Class. (Scharg Decl. ¶ 2–10, 13.) In sum, proposed Class Counsel have
vigorously prosecuted this action and will continue to do so throughout its
pendency. (*Id.*)

Accordingly, since Plaintiff and proposed Class Counsel have demonstrated
their commitment to representing the Settlement Class and neither have interests
antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *Merenda*, 296 F.R.D. at 535. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the proposed Settlement Class meets these requirements.

### 1.   *Common Questions of Law and Fact Predominate*

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement of Rule 23(a) in that both require the existence of common questions of law and fact—however, Rule 23(b) imposes the more stringent requirement that common issues predominate over individual issues. *Machesney v. Lar-Bev of Howell, Inc.*, 292 F.R.D. 412, 423 (E.D. Mich. 2013). In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the

"predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Common issues are at the heart of a case when there is generalized evidence that would prove or disprove an element of the action on a class-wide basis. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *see also Powers*, 501 F.3d at 619 (noting that "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification").

In this case, there are several common factual and legal questions that are at the center of this action: (1) whether Defendant is "engaged in the business of selling at retail . . . written materials," (2) whether Defendant disclosed "information concerning the purchase . . . of those materials" to third parties, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Defendant obtained written permission prior to the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Defendant properly informed its subscribers that they could remove their names at any time from the disclosed subscriber lists. (FAC ¶¶ 14, 41, 60.) These questions predominate over any issues affecting individual members (to the extent there are any) and are subject to common proof (i.e., examination of Defendant's uniform conduct). (*Id.*)

23

Because Defendant engaged in a single course of conduct with respect to all members of the Settlement Class, their claims "will prevail or fail in unison," and as such, predominance is met. *Whirlpool Litig.*, 722 F.3d at 859 (quoting *Amgen Inc.*, 568 U.S. at 460); *see also Coulter-Owens*, 308 F.R.D. at 536 (finding predominance satisfied on nearly identical claims and facts).

## 2. *A Class Action Is a Superior Method for Adjudicating This Action*

The class action device is also the superior means of adjudicating this controversy because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. Class actions are preferred over small, individual suits for damages because they provide a mechanism through which individuals who, under other circumstances, would not have the opportunity to seek redress from the defendant through litigation, can do so. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2010); *see also Amchem,* 521 U.S. at 617. Actions alleging a standard course of wrongful conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Young*, 693 F.3d at 545; *see also Powers*, 501 F.3d at 619 ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification."). As the court held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of

separate cases." 308 F.R.D. at 536. And in the context of certifying a class for

settlement purposes, "a district court need not inquire whether the case, if tried,

would present intractable management problems, for the proposal is that there be

no trial." *Amchem*, 521 U.S. at 620.

Here, all questions necessary to determine whether Defendant violated the

PPPA are common to all members of the Settlement Class. As such, a class action

is a much more efficient use of judicial and party resources than multiple actions.

*See In re Cardizem*, 200 F.R.D. at 351. Further, absent a class action, members of

the Settlement Class would almost certainly find the cost of individually litigating

their claims to be prohibitive. Indeed, no other member of the proposed Settlement

Class has brought any PPPA claims against Defendant, and thus, "there is no

indication that any class member wants to individually control his or her own

separate action." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 408

(E.D. Mich. 2012).

In addition, many members of the proposed Settlement Class may not even

be aware that Defendant is disclosing their protected information to third parties.

Where consumers are unlikely to discover (and vindicate) injuries absent

certification of a class, class treatment is superior to the alternatives. *Young*, 693

F.3d at 545–46.

In the end, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## V.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claims, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. (*See* Scharg Decl. ¶ 12; *see also* Exhibit 2-A.) And as a result of their zealous advocacy in this case, proposed Class Counsel have secured a settlement that provides substantial monetary relief, as well as the prospective relief necessary to protect the Settlement Class Members' privacy going forward. Thus, the Court should appoint Ari J. Scharg, Eve-Lynn J. Rapp, and Schuyler R. Ufkes of Edelson PC as Class Counsel.

26

## VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th Ed. 2002). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties. *Manual for Complex Litig.* § 21.632 (4th ed. 2004).

While the Sixth Circuit has expressed a strong judicial policy favoring the voluntary conciliation and settlement of complex class action litigation, *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), it has not specified a particular standard for granting preliminary settlement approval. Nevertheless, courts in this District generally look to two factors in making this determination. That is, preliminary approval should be given where the proposed settlement (1) does not disclose grounds to doubt its fairness, and (2) falls within the range of possible approval. *In re Packaged Ice*, 2010 WL 3070161, at *4; *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010);

27

*see also Int'l Union*, 2006 WL 1984363, at *4 ("The Court finds that the proposed

settlement falls within the range of possible approval, does not disclose grounds to

doubt its fairness, and includes no obvious deficiencies"). The proposed Settlement

in this case—which provides both monetary payments for the Settlement Class and

strong prospective relief—easily satisfies both factors.

First, there are no grounds upon which to doubt the Settlement's fairness. As

explained in detail above, the proposed Settlement was reached only after years of

hard-fought litigation, which included adversarial motion practice, extensive

formal discovery—including several depositions, multiple rounds of written

discovery, substantial third party discovery, and the review of thousands of

documents—numerous meet and confer conferences, and eventually, settlement

discussions and several rounds of arm's-length negotiations. (Scharg Decl. ¶¶ 2–

10, 13.) It was only after these hard-fought negotiations that the Parties were able

to agree on the principal terms of a class-wide settlement. (*Id.* ¶ 10.) As such, the

Parties—each represented by counsel with significant experience in valuing and

negotiating class action settlements—had sufficient information to make

knowledgeable decisions about settlement throughout the negotiations, and that is

borne out in the ultimate recovery, resulting in a payment to each class member

that is in line with the payments made in previous PPPA settlements that have all

received final approval. (*Id.* ¶ 11.) Thus, there are certainly no grounds from which

to doubt the fairness of the Settlement. *See Sheick*, 2010 WL 3070130, at *13

("[N]egotiations of the Settlement Agreement were conducted at arm's-length by

adversarial parties and experienced counsel, which itself is indicative of fairness,

reasonableness, and adequacy[.]"); *see also IUE-CWA v. Gen. Motors Corp.*, 238

F.R.D. 583, 597–98 (E.D. Mich. 2006) (finding that courts presume an absence of

fraud or collusion absent evidence to the contrary).

Second, the strength of Plaintiff's case compared to the settlement

demonstrates that the proposed Settlement is fair, reasonable, and adequate, and

well within the range of possible approval. Here, while Plaintiff and proposed

Class Counsel are confident in Plaintiff's claims, they are cognizant of the risks

that would accompany further litigation. (Scharg Decl. ¶¶ 14–17.) Indeed,

Defendant has made clear that absent a settlement, it would continue its vigorous

defense of this case. (*Id.* ¶ 15.) And of course, without a settlement, there would be

the uncertainty and expense of trial, and the risks and delay of inevitable appeals.

*See UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31,

2006) ("The obvious costs and uncertainty of such lengthy and complex litigation

weigh in favor of settlement.").

More specifically, Plaintiff is aware that Defendant would assert a number

of defenses on the merits, including that the PPPA neither prohibits the disclosure

of the magazine subscription information at issue (because the recipients of the

disclosures are its agents), nor applies to Defendant at all because it is not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute. (Scharg. Decl. ¶ 15.) Defendant would also likely challenge the constitutionality of the PPPA. (*Id.*) Looking beyond trial, Plaintiff is also keenly aware of the fact that Defendant could appeal the merits of any adverse decision, and that in light of the massive aggregate statutory damages in play it would attempt to argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns.[5] (*Id.* ¶ 16); *see, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

Moreover, since 2016, there have been multiple bills introduced by industry groups seeking to weaken the protections and remedies available under the PPPA, which, if successful, could strip the class of any statutory damage remedy. Indeed,

---

[5]     Though Plaintiff maintains that the sheer size of a class-wide statutory damages award cannot render it unconstitutional—*see* Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the BMW Guideposts Should Not be Used to Review Statutory Penalty Awards,* 63 Rutgers L. Rev. 327 (2010); *cf. Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 523 U.S. 424, 443 (2001) ("I continue to believe that the Constitution does not constrain the size of punitive damages awards.") (Thomas, J. concurring) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 599 (1996) (Scalia, J., joined by Thomas, J., dissenting))—he acknowledges that if he obtained a judgment on the merits and was awarded statutory damages on behalf of himself and the class, the $500 million damages award would likely be reduced.

on April 13, 2016, the Michigan legislature passed an amendment to the PPPA that added certain exceptions to the statute's confidentiality requirement and repealed its statutory damages provision prospectively. *See* S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016). Though the amendment only applied to claims accrued after the July 31, 2016 effective date, another bill was recently introduced on May 8, 2018 that, if successful, would repeal the statutory damages provision retroactively, meaning the PPPA's $5,000 statutory damages would not be an available remedy to the class in this case. *See* S.B. 984, 99th Leg. Reg. Sess. (Mich. 2018).

Given these concerns, Plaintiff and Class Counsel view the creation of the non-reversionary $1.7 million Settlement Fund—with its estimated $50–100 per claimant payment—as well as the required injunctive relief, to be a significant victory for the class. (Scharg Decl. ¶ 11.) This is especially true considering the "all or nothing" nature of Plaintiff's statutory claims: if he were to lose any aspect of this case, the class would get nothing. *See Leonhardt v. ArvinMeritor, Inc*., 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008) ("The parties recognize, and the Court concurs, that continued litigation would be a high stakes 'zero sum' undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat because the parties' core positions . . . are irreconcilable."); *see also Olden v. LaFarge Corp*., 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) ("The fact that the settlement amount may equal but a fraction of

potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.") (internal quotation omitted).

Further, in terms of monetary relief, the Settlement's projected $50–100 per-claim payment is in line with (and in most instances exceeds) other privacy settlements involving similar statutes that have been approved in this District and throughout the country. *See, e.g., Halaburda*, 2:12-cv-12831, dkt. 68 (granting final approval to a PPPA settlement that provided claimants with $74); *Rodale, Inc.*, 1:14-cv-12688, dkt. 54 (E.D. Mich. Sept. 29, 2016) (approving PPPA settlement paying $44 per claimant); *Kinder*, 1:14-cv-11284, dkt. 72 (approving PPPA settlement that provided claimants with $32 and identical injunctive relief); *Fraley*, 966 F. Supp. 2d at 948 (approved settlement providing claimants with a cash payment of $15 in right to publicity case with potential statutory damages of $750); *Lane*, 696 F.3d at 820-22 (approving a $9.5 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, dkt. 256 (approving $9 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3 (approving $8.5 million payment to *cy pres* as the sole form of monetary relief in

ECPA case with potential statutory damages of $10,000). Thus, the proposed Settlement is eminently fair, reasonable, and in line with the results achieved by other statutory privacy class actions that have received final approval from courts in this District and across the country.

For these reasons, Plaintiff and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of approval. (Scharg Decl. ¶ 17.) The Court should grant preliminary approval.

## VII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from

33

the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, the Settlement Administrator will send direct notice by email to all members of the Settlement Class for whom a valid email address is identified in Defendant's records. (Agreement ¶ 4.1(b); *see* Exhibit 1-B.) The email will contain an electronic link to the online Claim Form. (*Id.*) Next, the Settlement Administrator will send direct notice by First Class U.S. Mail, along with a postcard Claim Form with prepaid return postage, to all the members of the Settlement Class who did not receive an email. (Agreement ¶ 4.1(c); *see* Exhibit 1-C.) Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice" (*see* Exhibit 1-D), as well as access to important Court documents, upcoming deadlines, and the ability to file Claim Forms online. (Agreement ¶ 4.1(d).) Finally, the Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* ¶ 4.1(e).)

In sum, the proposed methods for providing notice to the Settlement Class satisfies both Rule 23 and Due Process, and thus, should be approved by the Court.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the Notice to the members of the Settlement Class, (iv) appointing Plaintiff Tom Higgins as Class Representative, (v) appointing Ari J. Scharg, Eve-Lynn J. Rapp, and Schuyler R. Ufkes of Edelson PC as Class Counsel, (vi) scheduling a Final Approval Hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

Dated: September 5, 2018          **TOM HIGGINS**, individually and on behalf of a class of similarly situated individuals

By: /s/ Ari J. Scharg
    One of Plaintiff's attorneys

Ari J. Scharg
ascharg@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn J. Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596.1111
Fax: (248) 671.0335

*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that on September 5, 2018, I served the above and foregoing ***Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

<u>/s/ Ari J. Scharg</u>

37